JAMES A. MARKS, Respondent, v. JOHN T. DAVIS & ANDREW SPROULE, Appellants.

St. Louis Court of Appeals, December 21, 1897.

1. **Contract of Hire**: CONSTRUCTION. A contract made on the twenty-ninth day of December, 1894, whereby plaintiff was employed by defendants as a traveling salesman at a certain salary for 1895, with the understanding that if the profits of his sales for their fiscal year beginning December 1, 1894, and ending November 30, 1895, equaled or exceeded a certain sum, then he should be paid a certain additional salary, was a divisible contract, although made at the same time and concerning the same subject-matter.

2. ————: FULL PERFORMANCE BY ONE PARTY: STATUTE OF FRAUDS. In this state a full and complete performance of a contract by one of the contracting parties takes the case out of the statute of frauds, and the party so performing his contract may sue on it in a court of law, without being compelled to abandon the contract and sue in equity or upon a *quantum meruit*. *Wally v. Reading*, 107 Mo. 351; *Bless v. Jenkins*, 129 *Id*. 657.

3. **Evidence**: INSTRUCTION. Where the monthly profits of defendants' business were figured by deducting the cost price of their goods, as shown by the figures marked upon them, from the price at which they were sold by plaintiff, and monthly profit slips, made by an employee of defendants, by the direction of their manager, furnished plaintiff when he requested it, were the only means plaintiff had of ascertaining the profits on the sales, having no access to defendants' books, the court did not err in refusing an instruction of nonsuit.

4. **Instruction**: EVIDENCE: ESTOPPEL. Where an instruction was given for defendants to the effect that profits in question, to be made by plaintiff, were the difference between the selling price and the cost of the goods at the place where kept, and an employee of defendants figured the profits on that basis, defendants were estopped to urge a different theory on appeal.

*Appeal from the St. Louis City Circuit Court.*—HON. HORATIO D. WOOD, Judge.

AFFIRMED.

*Eben Richards* for appellants.

Defendants' objection to the evidence should have been sustained, and their instructions for a nonsuit granted. R. S. 1889, sec. 5186; Browne on Stat. Frauds [5 Ed.], secs. 282, 460; Wood on Mas. and Ser. [2 Ed.], pp. 369, 379, 382, 383; *Pitcher v. Wilson*, 5 Mo. 46; *Johnson v. Reading*, 36 Mo. App. 306, and citations; *Same v. Same*, affirmed; *Nally v. Reading*, 107 Mo. 350; *Townsend v. Hawkins*, 45 *Id.* 286; *Withnell v. Petzold*, 104 *Id.* 409; *Berry v. Hatzell*, 91 *Id.* 132; *McElroy v. Ludlum*, 31 N. J. Eq. 828; *Osborn v. Kimball*, 41 Kan. 187; *Equitable Co. v. Baltimore Co.*, 63 Md. 285; *Sutcliff v. Atlantic Mills*, 13 R. I. 480; *Pierce v. Paine's Estate*, 28 Vt. 34.

*Edmond A. B. Garesche* for respondent.

The statute of frauds has no application to the facts of this case. The statute applies only to contracts, the performance of which can not be completed within one year. Browne on Stat. Frauds [5 Ed.], secs. 273, 278, 279; *Foster v. McO'Blenis*, 18 Mo. 88; *Dryden v. Kellogg*, 2 Mo. App. 87, 95; *Price v. Haeberle*, 25 *Id.* 201, 206; *Harrington v. Cable R'y*, 60 *Id.* 230.

Full performance, as in this case, takes the case out of the statute. *Souch v. Strawbridge*, 2 C. B. 808; Browne on Stat. Frauds [5 Ed.], 380; Wood's Mas. and Ser. [2 Ed.] 383; *Suggett's Adm'r v. Carson's Adm'r*, 21 Mo. 225; *Johnson v. Reading*, 36 Mo. App. 306, 312, 315; *Smock v. Smock*, 37 *Id.* 56, 66; *Self v. Cordell*, 45 Mo. 345, and citations. See, also, *McConnell v. Brayer*, 63 Mo. 464; *Bless v. Jenkins*, 129 *Id.* 647.

BLAND, P. J.—The respondent in his petition averred that appellants were co-partners engaged in

the wholesale dry goods business in the city of St. Louis under the firm name of S. C. Davis & Company. That prior to January 1, 1895, defendants employed plaintiff as a traveling salesman at an agreed salary of $3,000 per annum, and in addition agreed with plaintiff if the gross profits realized by them as the result of plaintiff's sales of their goods should equal or exceed the sum of $20,000, for the fiscal year of their business, commencing on the first day of December, 1894, and ending on the thirtieth day of November, 1895, that they would pay respondent, in addition to the stipulated salary of $3,000, the sum of $2,000. That plaintiff rendered the services he contracted to render, and that the gross profits on sales made by him for appellants for the fiscal year ending November 31, 1895, exceeded the sum of $20,000. That defendants refused to pay him the $2,000. The answer was a general denial. At the trial, before the introduction of any testimony, appellants' counsel made a statement to the court and jury, that in addition to the general denial of the agreement as alleged in the petition, appellants would rely upon the statute of frauds; that if the contract was made prior to January 1, 1895, and was not to be fully performed within one year from the date of making it, then it must have been in writing. It appears from the evidence that Marks had been in the continuous service of appellants as a traveling salesman for a good many years prior to January, 1895, and that for some years previous to 1895 he had been receiving a salary of $3,000 per annum. On the twenty-ninth of December, 1894, Marks called at the appellants' place of business with a view of making a contract with them for his service for the year 1895. The appellants told him they were cutting down salaries with a view of curtailing expenses. Marks then proposed to take twenty-five per cent of the profits which might be realized on

sales to be made by him, as full compensation for his services. Appellants refused to accept this proposition, but said to Marks: "We will not reduce your salary, and you may continue for the following year (1895) at a salary of $3,000." Marks then said: "If I make you $20,000, or if the profits on my sales equal or exceed $20,000, will you pay me $2,000 additional salary?" Mr. Sproule replied: "Yes, we will be glad to do so." Marks continued in the service of the appellants for the year and was paid his stipulated salary of $3,000, but the additional $2,000, which he claims he earned under the contract, appellants refused to pay. According to the evidence, the fiscal year of appellants was reckoned from December 1 to November 30 of the following year. The profits on the sales made by each of the firm's traveling salesmen were figured each month by James J. Dempsey, an employee of the firm, and slips showing the profits made by each salesman were made out and handed to Mr. Sproule, and to the salesmen when they requested it.

The slips so made of profits on Marks' sales showed the profits from December 1, 1894, to November, 1895, as follows:

| | |
|---|---:|
| Dec. 1894 | $ 825.64 |
| Jan | 1,665.58 |
| Feb | 1,227.60 |
| March | 2,374.07 |
| April | 1,983.67 |
| May | 1,968.30 |
| June | 577.55 |
| July | 2,035.55 |
| August | 2,519.57 |
| Sept | 1,552.02 |
| Oct | 2,753.57 |
| Nov | 1,165.43 |
| Total | $20,648.64 |

No profits were at any time figured for the month of December, 1895, for the reason, as stated, that the

appellants contemplated going out of business, and did go out in June following. Appellants contend that if the contract for the payment of the extra $2,000 to Marks was made at all, it was made in connection with the contract to pay $3,000 as salary; that it was all one and the same contract, and is not divisible, and therefore had reference to future earnings only, and run for the whole of the calendar year 1895. We can not agree with the contention that the contract is not divisible, although made at the same time and concerning the subject-matter—that is, for the service of Marks for the year 1895, and the compensation to be paid therefor. The stipulated salary of $3,000 was to become due upon but one condition, that is, that Marks should render the services he contracted to render for and during the whole of the calendar year 1895. The payment of the $2,000 extra salary or bonus depended not only upon the fact that Marks should serve the appellants for the year 1895, but upon the contingency that the profits to appellants by reason of Marks' services should within a certain period equal or exceed $20,000. The fact that the payment of the $2,000 was made to depend upon the performance of this additional condition (to earn for appellants $20,000), in profits which condition might or might not be fulfilled, notwithstanding Marks' services for the whole year, certainly makes of the contract a divisible one. 2 Parsons on Con. [5 Ed.], p. 517. But we do not see that this question is material to a correct solution of the principal contention of appellants, that the contract is within the statute of frauds. The contract was made December 29, 1895. The right of Marks to demand and receive this extra $2,000, as we have seen, was dependent as well upon a full year's

*CONTRACT of hire: construction.* (margin note)

*CONTRACT of hire: full performance by one party: statute of frauds.* (margin note)

service beginning January 1, 1895, as upon the fact that the profits to be made upon his sales should equal or exceed $20,000, nor does the fact, if it is a fact, that these profits were to be based upon sales already made in December, 1894, and to be thereafter made in the first eleven months of the year 1895, in any way alter the situation. Or if he had earned the $2,000 in less than one year, the condition would yet remain that he must serve out all of the year 1895, before the money would become due. In no view of the facts could the contract be fully performed within one year, and not having been reduced to writing, is within the statute and can not be enforced in a court of law, unless it is taken out of the statute by reason of the fact that it was fully performed by Marks. In *Johnson v. Reading*, 36 Mo. App. *loc. cit.* 315, Judge ROMBAUER says that, "We may concede that it is fairly deducible from all cases decided in this state touching contracts falling within the various sections of the statute of frauds, that where the contract has been fully performed on one side and the other party had the benefit of such performance, recovery may be had even upon the contract itself. *Pilcher v. Wilson*, 5 Mo. 46, alone being opposed to this view," and cites *Blanton v. Knox*, 3 Mo. 342; *Suggett v. Carson*, 26 Mo. 221; *Self v. Cordell*, 45 Mo. 345; *Tatum v. Brooker*, 51 Mo. 148; *Winters v. Cherry*, 78 Mo. 344. As seemingly supporting this view, the case of *Johnson v. Reading*, was certified to the supreme court for the reason that it seemed to be in conflict with *Winters v. Cherry*, 78 Mo. 344. The supreme court not only affirmed the decision of the court of appeals in an opinion delivered by Judge Sherwood, but commended the opinion as written by Judge Rombauer, 107 Mo. 351. In *Bless v. Jenkins*, 129 Mo. *loc. cit.* 657, Judge SHERWOOD used this language: "The complete performance of the contract by one contracting party

forecloses his adversary from interposing the statute of frauds as a defense." In *Smock v. Smock*, 37 Mo. App. *loc. cit.* 66, 67, the Kansas City court of appeals recognize this rule and cited *Self v. Cordell; Suggett v. Carson; McConnell v. Brayner* and *Winters v. Cherry*, *supra*, as supporting it. In view of this line of decisions ᴔ we think we can safely say that the rule is firmly established in this state, that a full and complete performance of a contract by one of the contracting parties takes the contract out of the statute of frauds, and that the party so performing his contract may sue upon it in a court of law, and that he is not compelled to abandon the contract and sue in equity or upon a *quantum meruit*, as seems to be the law in some of the states. We hold that the trial court committed no error by ignoring the statute of frauds under the evidence in this case.

Appellants asked the court to instruct the jury that under the pleadings and evidence the plaintiff could not recover, which was denied by the court. Appellants' contention here is, that the evidence is insufficient to support the verdict and judgment. It is true that Dempsey testified that the profits figured by him from month to month were only approximately correct, but he also testified that these monthly profits were figured by deducting the cost price of the goods, as shown by figures marked upon them, from the price the goods were sold for by the traveling salesmen. It was also in evidence that by the direction of Mr. Sproule, the general manager of appellants' business, these monthly profit slips made by Dempsey were furnished the traveling salesmen, when he requested it; this had been the custom. These slips were the only means furnished to Marks by which he could ascertain the profits made on his sales, as he had no access to the books of appellants; and it is a

EVIDENCE: instruction.

fair inference that both Marks and Sproule had in their minds the profits as shown by these slips, when the agreement was made for the bonus of $2,000, if Marks' sales should equal or exceed $20,000 for the year. Mr. Long, the chief bookkeeper of appellants, testified that the freight and drayage of the goods sold by Marks amounted to over $2,300, and that this should be taken out to show the net profits. This calculation was made at the end of the year. To hold that Marks is bound by this method of getting at the profits, in view of all the testimony, would be to make him a party to a contract that he never had in mind, and to entrap him into a year's services for appellants, upon terms to which he had never agreed.

Appellants asked an instruction (which was given) to the effect that the profits to be made by Marks were the difference between the selling price and the cost price of the goods at the place where kept. Dempsey figured the profits on this basis, and it does not lie in the mouth of appellants to urge a different theory here, or to say there was no evidence in support of this theory of the case. *Brooks v. Yocum*, 42 Mo. App. 516; *Tomlinson v. Ellison*, 104 Mo. 105; *Cody v. Vaughan*, 53 Mo. App. 169; *Harper v. Morse*, 114 Mo. 317; *Scott v. City of Nevada*, 56 Mo. App. 189. The judgment is affirmed. All concur. Judge Biggs in result.